## Muscovalley v. Horn et al.

(Decided Nov. 25, 1932.).

WHEELER, WHEELER & SHELBOURNE, and BEN B. MORRIS and W. T. WHITE for appellant.

M. C. ANDERSON for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

George Muscovalley has appealed from a judgment of the Ballard circuit court entered after a number of cases had been consolidated. This record is very large and rather involved, and to make it understandable it will be necessary for this opinion to go into it in detail.

### Muscovalley's Ferry Case.

On July 18, 1921, Muscovalley posted a notice that on August 15, 1921, he would move the Ballard county court to establish a ferry from Holloway's Landing on the Kentucky shore of the Ohio river across that stream to Mound City, Ill. On August 15, 1921, a protest was filed by N. C. Horn and about one hundred others.

The matter was passed until September 15, 1921, and after a protracted hearing then begun, the court on September 18, 1921, established a ferry and granted to Muscovalley the right to operate it, fixed the tolls, etc. There seems to have been some irregularity about his making bond, but we have treated the case as though everything had then been regularly done.

Muscovalley was a nonresident of Kentucky and was then, and has since remained, a resident of Mound City, Ill. He neglected to report his ferry franchise for taxation and had some trouble with the state tax commission, which is set out at length in the record, but

which we do not regard as of any importance in our determination of the questions before us. Muscovalley continued to operate his ferry, and on September 17, 1928, this occurred:

"Ballard County Court. Regular Term—First Day, 17th day of September, 1928, Judge Ben B. Morris, presiding. In the matter of George Muscovalley, Petitioner Ex parte. It appearing to the Court that George Muscovalley has been a non-resident for more than a year and has failed to sell his rights to a resident, as provided by law, and no bond being of record to operate a ferry; it is ordered that he sell his rights within one year, or, becoming a resident, execute a Bond within six months, upon his failure to forfeit any right he has; that copy of this order be served on him, together with a summons to answer at next Term of this Court.

"Ben B. Morris."

A copy of this order was executed on Muscovalley September 20, 1928, and on that same day a copy of the summons mentioned in the order was served on him, but Muscovalley did nothing.

### Horn's Ferry Case.

The next step occurred on August 18, 1930, when N. C. Horn posted this notice:

"Notice is hereby given that at the September Term of the Ballard County Court (same being September 15th 1930), I will apply to the County Court of Ballard County, Kentucky, to revoke the grant of a Ferry franchise or privilege heretofore claimed to have been granted to Geo. Muscovalley, by said court, for the reasons that said Geo. Muscovalley, has not complied with the provisions of section 1808, Ky. Statutes, with respect to Ferries, which ferry and grant referred to is across the Ohio River from Holloway Landing in Ballard County, Kentucky, and from the lands now owned by the undersigned, and from which lands the said Muscovalley now operates a ferry, and which is bounded on the north by the land of N. C. Horn, on the east by the lands of N. C. Horn, on the south by the public road and on the west by the Ohio River.

"Notice is hereby further given that the undersigned will on said date and place and in said court, make application to said Court for permission to establish and operate a ferry over the Ohio River in said county and state, and from the lands owned by the undersigned fronting on the Ohio River at Holloway Landing, and abutting and adjacent to the Public Road at said place and running thence up the river a distance of 600 feet, and of sufficient depth to successfully handle the traffic, the undersigned owning the land running back from the river at said place a distance of approximately one-half of a mile, and for such other and further relief as he may be entitled.

"This August 18th, 1930.

"N. C. Horn, owner of the said Land."

Muscovalley awoke, came in, and offered to give the bond he should have given nine years before and to otherwise comply with the law in regard to the bond. The court took this action:

"Ballard County Court. In the matter of N. C. Horn Application to establish a ferry.

"On this day this matter came on regularly for further hearing, and the demurrer heretofore filed by George Muscovalley to the petition and application of N. C. Horn to establish and have granted to him a ferry franchise and right to operate a ferry coming on to be heard and being submitted to the Court, and the Court having heretofore heard argument of Counsel with respect thereto and being now fully advised doth overrule said demurrer to which George Muscovalley excepts.

"Then came the said George Muscovalley by Attorneys and moved the Court that he be given until Tuesday, Sept. 23, 1930, in which to plead further. Said motion being submitted to the Court and the Court being sufficiently advised doth sustain the same, and it is now ordered that George Muscovalley be and he is hereby given until Tuesday, Sept. 23, 1930 in which to plead further, to which the petitioner, N. C. Horn excepts."

On September 23, 1930, Muscovalley filed a second demurrer to Horn's application, he traversed the state-

ments of it, he set out Horn's unsuccessful protest made to Muscovalley's application of nine years before, pleaded that Horn's application of September 15, 1930, was a collateral attack upon the court's order of September 18, 1921, pleaded that his bond of September 19, 1921, had been lost, sought permission to execute a new bond, admitted he was then and was on September 18, 1921, a nonresident of Kentucky, attacked section 1808 as void, because, as he alleged, it violated subsection 1 of section 2 of article 4 of the United States Constitution, in this, that if he is deprived of his ferry privilege by reason of being a nonresident that he will be deprived of his property without due process of law and will be denied the equal protection of the law, that said section 1808, Ky. Stats., is void, and violates section 10 of article 1 of the United States Constitution, because it impairs the obligation of contracts, that this section of the Statutes is void for conflict with section 1 and section 13 of the Bill of Rights in the Kentucky Constitution, as it will deprive him of his property without compensation, etc.

The court overruled all of Muscovalley's contentions, decided everything in favor of Horn, and Muscovalley appealed to the Ballard circuit court, and this (Horn's Ferry Case) is the first one of the various consolidated cases before us.

### The Injunction Suit.

On September 30, 1930, Muscovalley filed a suit in equity in the Ballard circuit court, gave bond, and secured a temporary restraining order, restraining Horn from operating his ferry, etc., and this is the second one of the consolidated cases before us.

### Muscovalley's Ferry Case Again.

On April 7, 1931 (within the three years allowed by section 1801, Ky. Stats.), Muscovalley filed in the Ballard circuit court an appeal from the order of September 17, 1928, and this is the third of the various consolidated cases before us.

### Suit Against the Officers.

On April 7, 1931, Muscovalley filed in the Ballard circuit court a suit against Jesse Sullivan, who was sheriff of Ballard county in September, 1928, and against Harry Lane, who was clerk of the Ballard

county court in September, 1928, and against Earl D. Johnson, who was in April, 1931, clerk of the Ballard county court. This was a direct attack, under section 3760, Ky. Stats., upon certain acts of these officers. The charge against Lane being that two certain papers (copies of the order of the Ballard county court made September 17, 1928) made out by him, and which Lane attested as copies of the court's order of September 17, 1928, are false and that the following return made upon one of them by Sullivan is false:

"Executed the within court order by delivering a true copy of same to the within named George Muscovalley; this Sept. 20, 1928.

"Jesse Sullivan, S. B. C."

He also alleged this return upon the summons issued by Lane on September 17, 1928, is false:

"Executed the within summons on the within named George Muscovalley, by delivering to him a true copy of the same; this Sept. 20th, 1928.

"Jesse Sullivan, S. B. C."

He also attacked the validity and genuineness of the order of September 17, 1928, as it appears on the order book, and this is the fourth of the various consolidated cases before us.

Muscovalley's Attempted Transfer.

The next step taken is this:

"Ballard County Court. Regular July Term, 1931, July 21st, 1931.

"Came George Muscovalley and produced in open court a deed from himself and wife to the Mound City Automobile Ferry, a corporation created under the laws of the State of Kentucky with its chief offices at Paducah, Kentucky, conveying to said Mound City Automobile Ferry, all the right, title and interest of the said George Muscovalley in and to the ferry franchise granted to the said Muscovalley by order of the Ballard County Court dated September 19th, 1921, as shown by order recorded in Order Book 'J', Page 41 in Ballard County Court Clerk's office, and all his right, title and interest in the lease from J. T. McQuady to the Mound City Ferry Company, a corporation dated Aug. 28th, 1919 and transferred by

said Mound City Ferry Company to George Muscovalley by lease dated June 21st, 1921, and of record in the office of the Ballard County Court Clerk in Deed Book 31, page 477, which lease was held as valid by an order of the Ballard County Court dated September 21st, 1921.

"The said George Muscovalley filed his motion for leave of court to transfer said ferry franchise as in said deed conveyed and the same being submitted to the court is hereby overruled and leave to convey and transfer said franchise is refused. To all of which the said George Muscovalley objects and excepts and prays an appeal to the Ballard Circuit Court, which is hereby granted.

"[Signed]   Walter Tanner, Judge."

On that same day Muscovalley appealed to the Ballard circuit court from the above action of the Ballard county court, and this is the fifth of the consolidated cases before us.

### Proceedings in Circuit Court.

There was perhaps an order consolidating these cases, but that order does not appear in the record. The circuit court treated them as consolidated and so shall we. On the 18th of September, 1931, the court rendered a judgment awarding to Muscovalley no relief whatever, and he has appealed.

We shall now dispose of these cases. We shall take up the suit against the officers first. Muscovalley claims that certain papers which Jesse Sullivan certifies he served on Muscovalley were not so served. Muscovalley testifies positively they were not, and Mr. Sullivan is equally positive in his assertion that they were. There arises a question of the accuracy of the memory of these two men, and we find in the record, in the deposition of Mr. Muscovalley, evidence that makes it appear that his memory is not very dependable. The evidence is this: He organized a corporation known as the Mound City Automobile Ferry, and when he testified, less than a month after that, he was unable to say who were members of that corporation, he could not tell how many shares of stock they had, he could not tell what was the par value of the stock, he could not tell how many shares of stock there were, and he could not tell who kept the minutes of the meeting.

A man, whose memory would not retain such important matters as these for one month's time, ought not to question the solemn return of an officer made three years before, especially when that officer testifies positively that he did serve the papers on the date stated in his returns.

Muscovalley has attacked the validity of the order of September 17, 1928, but Mr. Lane testifies positively that he wrote that order on page 411 of order book K of the Ballard county court at the direction of Hon. Ben. B. Morris, the judge of that court. The 17th day of September, 1928, was the first day of the September term of the Ballard county court, and Mr. Muscovalley is suspicious of this order because it is headed, "Regular Term first day, 17th day of Sept. 1928, Judge Ben B. Morris presiding," and on the next page that is page 412, the orders begin, "Ballard County Court, regular term, first day, 17th day of Sept. 1928, Judge Ben B. Morris presiding," and the orders on page 412 were written, not by Mr. Lane, but by a lady who was then Miss Opal Perkins but who is now Mrs. Opal Perkins Sullivan, having become such by marriage to Jesse Sullivan; but we are unable to see why these orders become invalid because one was written by the clerk himself and the other by his deputy, nor can we see why they become invalid because, after having opened the court by the order on page 411, a similar notation is made on page 412. These orders would be none the less valid if such a notation had been made at the head of every order entered on that day.

Muscovalley, as a part of his evidence that this court order and summons were not issued and served on him at the time and in the manner stated, introduced Mr. Edward W. Wear, the publisher of the Ballard Yeoman, and Mr. Wear testified, after examining the summons in question, that he thought he had printed that summons, as it was an exact duplicate of his type, and that he came to Wickliffe in October, 1928, and from this it is argued that this summons could not have been issued on this form in September, 1928. Against this we have the deposition of Mr. N. B. Rogers, who sold the Ballard Yeoman to Mr. Wear, and he testified that while he was the owner of the Yeoman he printed blanks for the various county officials, and printed

blanks like this one; but he was unable to say he printed that particular blank.

Certainly the evidence against these officers does not even start to measure up to the requirements set out in Green v. Cawood, 230 Ky. 823, 20 S. W. (2d) 984, and McGuire v. Cope, 225 Ky. 521, 9 S. W. (2d) 528, that is, the evidence must be clear and convincing; hence the court did not err in deciding in favor of the officers.

In the Muscovalley Ferry Case, after the validity of the acts of these officers is established, there is nothing that can be said for him. He should have taken heed and should have taken action when Mr. Sullivan served on him the copy of the court's order of September 17, 1928, and the summons that accompanied it. Having disregarded the processes of the court, he is in no position to complain of what the court did to him.

The constitutional questions he is raising have been decided adversely to his contention in Crittenden County v. McConnell, 237 Ky. 806, 36 S. W. (2d) 627; hence the judgment of the court that Muscovalley had forfeited his ferry franchise was correct.

With the suit against the officers and Muscovalley's Ferry Case disposed of, it follows that there was nothing to prevent the court from granting a ferry franchise to Horn; hence the judgment in the Horn Ferry Case is affirmed.

Having disposed of the Muscovalley Ferry Case, the suit against the officers, and affirmed Horn's Ferry Case, then it follows that the injunction case must also be affirmed, for nothing can be more elementary than this, that you cannot enjoin a man from doing what he has a right to do.

Having affirmed the court's action in adjudging that Muscovalley had forfeited his ferry franchise, it follows that he had no franchise to transfer to the Mound City Automobile Ferry Company; hence the court did not err in deciding against him upon his attempt to do so. We find no error in the adjudication of the court relative to cost.

The judgment is affirmed.