# Billingsly v. Pearcy.

(Decided Dec. 5, 1933.)

N. R. PATTERSON and W. T. DAVIS for appellant.

B. B. GOLDEN and GOLDEN, GILBERT & GOLDEN for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On November 12, 1913, John Reese, together with his son, W. C. Reese, and his daughter, Mossie Reese, executed to John Pearcy a note for $837.57. In the year 1924 Pearcy brought suit on the note in the Bell circuit court, and on February 10, 1925, the following return on the process, which had theretofore been issued, was made:

"Came to hand and executed on Mossie Reese by handing her a true copy of the within summons. Will Reese not found in Bell County, this the 10th day of February, 1925. Martin Green, S. B. C. By Leslie R. Goodman, D. S. B. C."

Judgment was rendered by default on September 16, 1925. Thereafter Mossie Reese, the judgment defendant, married a man by the name of Billingsly, and will hereafter be referred to as Mrs. Billingsly.

On April 7, 1928, an execution was issued on the judgment directed to the sheriff of Fayette county, commanding him to collect the amount of the note, with interest and costs. On April 10, 1928, this execution was levied on some land in Fayette county. In the month of December, 1928, Pearcy brought a suit in Fayette county to enforce the collection of the execution, and made Mrs. Billingsly a party. On April 23, 1929, Mrs. Billingsly answered and attacked the judgment on which

the execution was issued. The Fayette circuit court held that it was without jurisdiction to question the Bell county judgment.

On March 18, 1930, Mrs. Billingsly brought this suit in Bell county to have the Bell county judgment rendered on September 16, 1925, declared null and void, and to enjoin the enforcement thereof on the ground that by mistake of the officer no process was ever served on her. It developed on the hearing that at the time of the service of the process there were two Mossie Reeses, one the wife of W. C. Reese, and the other Mossie Reese Billingsly, who was then unmarried, and the question before the court was which Mossie Reese was served. The court held that the process was served on Mrs. Billingsly, and dismissed the petition. Mrs. Billingsly appeals.

While the case was before the Fayette circuit court, the depositions of Mrs. Billingsly and Leslie R. Goodman, who served the process, were taken, and the Bell circuit court, in addition to hearing other evidence, permitted these depositions to be read. In her deposition Mrs. Billingsly testified as follows: In January, 1918, her brother W. C. Reese, married Mossie Collins, who, between that time and the year 1925, gave birth to six children. She knew Leslie R. Goodman well, and he never served any process on her in the suit brought by John Pearcy. She never entered her appearance to, or took any steps whatever in, the action. The Fayette county farm was conveyed to her in September, 1927, and, not being able to pay her part, she reconveyed her interest to her husband in April, 1928. She could not tell where her brother and sister-in-law were living at the time, as they lived with her in Middlesboro about as much time as they lived in Wallins. According to her best recollection, she was in Middlesboro in February, 1925. Though not positive where her brother and sister-in-law were living, it struck her that they were living in Harlan county. Her sister-in-law was a blonde. She herself was medium.

Prior to giving his deposition in the Fayette county action, Goodman, who served the process, was taken by Mrs. Billingsly to the home of Martin Green, who at the time of the service was sheriff of Bell county, and admitted in his presence that he served the process on

Mrs. W. C. Reese and not on Mrs. Billingsly. After that he was taken to Fayette county, where he remained for several weeks. While there he also admitted in the presence of several reputable witnesses that he did not serve the process on Mrs. Billingsly.

In his deposition which he gave in the Fayette county action Goodman testified as follows: He was deputy sheriff of Bell county at the time. He knew Mossie Reese, who lived in Middlesboro, and Mossie Reese, the wife of W. C. Reese. He never served the process on Mossie Reese Billingsly, but served it on Mrs. W. C. Reese. He found Mrs. Reese in Middlesboro, but did not remember where, or who was with her. He did not see any baby in her arms or any children around at the time, and served the process on Mrs. Will Reese. "She cussed a circled saw when I served it." Mrs. Reese was a low, heavy-set lady, about four and one-half or five feet tall, and her hair was dark. He did not see Mr. Pearcy on the street immediately after serving the summons, and did not collect a 60-cent fee for serving it. In explaining how he happened to serve the process, he said, "I just thought it was the man's wife."

Thereafter Goodman gave a second deposition wherein he testified that he served the summons on Mossie Reese, who is now Mossie Reese Billingsly. At the time of the service she was on Nineteenth street in Middlesboro, in front of the Friends Hotel, fixing to get into her car. Mr. Debusk, Pearcy's lawyer, brought the paper to him to be executed, and told him where Mossie Reese was. After serving a copy on Mossie Reese Billingsly, he took it back to the office of Mr. Debusk, who wrote out the return on it. That was done the same evening the paper was served. About five minutes after he served the process he ran into Mr. Pearcy, who gave him 60 cents. He did not serve any process on Mrs. Mossie Reese, the wife of W. C. Reese. He attributed his former testimony to the fact that Mrs. Billingsly promised him a job, and that he was intoxicated practically all the time he was in Lexington, and at the time he gave his deposition. He further claims that Speed Marsee told him to see Mr. Pearcy, and tell him that he wanted to correct his testimony. Marsee said that, if he would do that he would give him as much as $50. He got from Marsee $10 at one time and $5 later. After

Marsee had the talk with him, he called John Pearcy over, and John Pearcy said he would not pay a damn cent. Pearcy had nothing to do with the conversation he had with Marsee. In another deposition Goodman admitted making the statement to Martin Green that he served the process on Mrs. Will Reese and not on Mossie Reese Billingsly, but said, "It was false, that was all understood there," and that he made the statement because he was just trying to help them out.

Mrs. Thulia Sproles deposed as follows: She knew Mrs. Billingsly, Mossie Reese, the wife of Will Reese, and also Leslie R. Goodman. On one occasion she met Mrs. Reese on Nineteenth street near Ginsberg's. While talking to her, Goodman came up, asked where Bill was, and told her he had a paper for her and Bill Reese. Mrs. Reese asked him about it and said, "It is not for me, it is for John Reese, go and serve it on old John Reese. I don't owe old John Pearcy anything." Goodman handed her the paper. It was about 10 or 11 o'clock at the time, and a mighty pretty day. She did not remember what day of the week it was, or what year it was. She mentioned this the first time Mrs. Billingsly got after her to take her to Lexington. She judged it was two or three years after the occurrence when she went to Harlan with Mrs. Billingsly to get an affidavit from Mrs. Will Reese. At the time the Reeses lived in Harlan, but Will Reese was not there with them. She did not notice Mrs. Reese's condition at the time.

On February 7, 1929, and prior to the taking of any evidence either in the Fayette county action or the Bell county action, Mrs. Billingsly went to Harlan county, accompanied by Mrs. Sproles, and obtained from Mrs. Will C. Reese an affidavit to the effect that, while on a visit to Middlesboro, she was summoned by Leslie Goodman to appear in the Bell circuit court and answer a suit filed by John Pearcy against her and others; that she knew she had no business relations with such a man, and paid no further attention to it, and that, after her return to her home in Wallins Creek, Marion Howard, a deputy sheriff of Harlan county, executed another summons on her in the same case.

In the first deposition taken on November 2, 1930, Mrs. W. C. Reese testified as follows: She knew John Pearcy very slightly, and thought she knew Leslie R. Goodman. She heard of the suit brought by John

Pearcy, but was not a party to it. She did not think that Goodman ever served her in that case, but she was served with a notice of that case in Harlan county after the 20th of February. The service was made by Marion Howard, and she was at her home in Wallins at the time. She did not remember whether notice was served on her as defendant or for her husband. There was a paper served on her in Middlesboro, but, since studying, did not think that was the paper. It was in the case of Sears, Roebuck & Co. against her, but she was not sure that Leslie Goodman served it. Her son William Reese, Jr., was born February 20, 1925, at Wallins. The first time that she was in Middlesboro after the birth of her child was between the 1st and 3rd of March, 1925. On February 10, 1925, she was in Wallins at her home and not at Middlesboro. In a second deposition given on July 8, 1932, she admitted signing the statement contained in the affidavit, but did not swear to it. The statement was typewritten by Mrs. Billingsly, who told her that the statement would not be used in the case, but she wanted to show it to Mr. Pearcy's lawyer and get the case dropped. Mrs. Billingsly also told her that Mr. Pearcy would garnishee her husband's wages because he was on the note too. She reiterated the statement that Leslie Goodman did not serve the summons on her either in Harlan county or anywhere else. She added that she was then testifying to the truth, and that Mr. Pearcy and Mrs. Billingsly both knew that she had tried to avoid making any statement at any time, and had tried from the beginning not to get mixed up in it.

L. F. Debusk, attorney for Pearcy, testified that the summons was issued for Mossie Reese and W. C. Reese, her brother, in the case on the Pineville docket. His recollection was that summons for W. C. Reese was sent to the sheriff of Harlan county and was returned with no service on it. He had summons issued for Mossie Reese at Middlesboro in Bell county. On the day that Goodman claimed he summoned her, he saw Mrs. Billingsly in town, met Goodman, and told him that he had seen her. Goodman left, and on his return said he had summoned her and had him make the return.

John Pearcy testified that he did not authorize Speed Marsee, or any one else, to promise Leslie Goodman $50 or any other sum to change his testimony. Speed Marsee did show him a cold check for $15, and

asked him if he would pay it. He replied that he did not owe him a damn cent. He was in front of the Crystal Cafe on Nineteenth street when Goodman came back and said he had served the summons. He then gave Goodman 60 cents.

Speed Marsee testified that he never told Goodman that he could get some money out of it if he would change his testimony, and that Pearcy never suggested to him directly or indirectly that he try to get Goodman to change his testimony. However, he did cash a $15 check for Goodman, and produced the canceled check. The check was "cold," and was never paid. Goodman told him that Pearcy owed him some money. He afterward saw Pearcy and asked him if he owed Leslie Goodman anything. Pearcy said that he did not owe him a damn cent.

Several reputable witnesses of Lexington testified that they saw Goodman on several occasions and that he was not drunk when they saw him, or at the time he gave his deposition.

It is argued that, inasmuch as Goodman testified falsely, no effect can be given to his certificate. With this contention we cannot agree. In the first place, Goodman was acting as an officer at the time the summons was served, had not been subjected to any pressure, and there was no incentive for him to make a false certificate. In the next place appellant does not contend that the process was not served at all, but insists that it was served on Mossie Reese, the wife of W. C. Reese, and not on her.

Clearly the burden of showing that she was not served with process was on appellant. It is argued that this burden was met by her evidence, and that of Mrs. Sproles, who was an unimpeached and disinterested witness, and that no weight should be given to the evidence of Goodman and Mrs. W. C. Reese because of their false and contradictory statements. In the first place, we are not disposed to the view that Mrs. Sproles was a disinterested and unimpeached witness. Her long friendship for Mrs. Billingsly, and her active efforts in her behalf, show that she was very much interested in the result of the suit. In the next place, she fixed the service of the papers handed by Goodman to Mrs. W. C. Reese at a different time and place from that testi-

fied to by other witnesses. Not only so, but she was unable to state the year when the occurrence took place. In view of these circumstances, Mrs. Sproles' evidence, even if standing alone, could not be said to be very persuasive.

In view of the character of the witnesses who testified to the contrary, we do not credit Goodman's statement that he was intoxicated on the day he gave his deposition in Lexington, or that he was promised money to change his testimony. Not only so, but, since Goodman testified falsely in one or the other of his depositions, it is apparent that his evidence, standing alone, gives but little support to either side. However, we are not inclined to take the same view of Mrs. W. C. Reese's testimony. It is quite evident that she was reluctant to testify, and anxious to do all that she could to help her sister-in-law. In her first deposition she was very cautious, and said, "I don't think he ever served me in that case." She afterward said there was a paper served on her in Middlesboro, but she thought it was in the case of Sears, Roebuck & Co. against her, and was not sure that Leslie Goodman served it, and added, "I can't remember of his serving any." She also testified that she was in Wallins at her home on February 10, 1925, the date of the service of the process, gave birth to a child on February 20, 1925, and was not in Middlesboro in that year until some time between the 1st and 3d of March. It is true that she stated in an affidavit obtained before she testified that she was served with process by Leslie Goodman in the case in question, but she explained in her subsequent deposition that she was induced to do it by the promise that it would not be used as evidence in the case, but only for the purpose of having the case dismissed. She further stated in her second deposition that the paper handed her was in the case of Sears, Roebuck & Co. against her, and not in the case in question, and, on being asked if she was telling the truth, said, "I am."

Laying aside the evidence of Goodman, we have on the one hand the evidence of Mrs. Billingsly and Mrs. Sproles, and on the other the following facts: Mrs. Billingsly was the Mossie Reese who signed the note, and against whom suit was brought; the suit was filed in Bell county, the county of her residence, and process was issued against her and delivered to Goodman for

service in that county. Goodman was informed that Mrs. Billingsly was in Middlesboro, left for the purpose of serving the process on her, and on his return stated that he had served it on her. Goodman also collected the fee therefor from John Pearcy. Not only was Mrs. W. C. Reese's condition such that it was not probable that she was in Middlesboro on the day of the service, but she testified positively that she was at home in Wallins, which was over 40 miles away, and did not come to Middlesboro until between March 1st and 3d. Indeed, the outstanding fact of the case is that Mrs. W. C. Reese was not in Middlesboro on the day the process was served. The rule is that an officer's return on process can only be impeached by clear and convincing evidence, Green v. Cawood, 230 Ky. 823, 20 S. W. (2d) 984, and, upon a consideration of appellant's evidence, in the light of all the facts, we are constrained to the view that it does not come up to the required standard, and that the chancellor did not err in holding that the process was served on Mrs. Billingsly and not Mrs. W. C. Reese.

Judgment affirmed.