## Klarer Provision Company v. Frey (two cases).

(Decided Dec. 15, 1933.)

(As Modified on Denial of Rehearing Jan. 19, 1934.)

DODD & DODD for appellant.

DOOLAN & DOOLAN for appellee.

Opinion of the Court by Hobson, Commissioner— 'Affirming.

On November 1, 1930, the Klarer Provision Company recovered a judgment in the Jefferson circuit court for $13,444.34, against Chester F. Frey and his mother, Emma M. Frey. An execution was issued on the judgment which was levied on the home of the mother in May, 1931. On May 26, 1931, she filed her petition in the Jefferson circuit court under section 518 of the Civil Code of Practice, alleging in brief that the summons was not served on her, she knew nothing of the action, was prevented from defending by casualty and misfortune, she had not signed the note and knew nothing of it, and praying that the judgment be set aside. On June 11, 1931, she entered a motion in court to set aside the judgment and tendered an answer pleading that she had not signed or delivered the note sued on. The two actions were heard together. The court on the proof set aside the judgment and allowed the answer to be filed. On a hearing of that case there was a jury trial. The jury found in favor of Mrs. Frey. The court entered a judgment dismissing the action as to her, and the Klarer Provision Company appeals.

Mrs. Frey is seventy-one years old. Chester Frey is forty-six; he is married and lives with his mother. For a number of years he had been retailing meat for the Klarer Provision Company and did a business of twenty to thirty thousand dollars a year, but he did not keep up his account with the Klarer Provision Company. He gave notes from time to time, also gave them checks which were not paid, until the debt amounted to $13,444.34.

The proof is conflicting as to what followed. According to the proof for Mrs. Frey, the company was threatening to prosecute Chester Frey on the cold checks he had given them, and drew up the note, telling him that would be satisfactory if his mother would sign it. He took the note home; signed it himself; put a check, which his mother had signed, under a carbon paper, and thus traced her signature to the note; then wrote over it in ink so as to make it look like her signature. He took the note to the company. The company accepted it. The paper had some marks of the carbon paper, and the officer of the corporation, not being quite satisfied with it, took it to the county clerk's office and compared it there with the genuine signature of Mrs. Frey in the office, and thinking that it was a correct signature accepted the note. He did not go to see Mrs. Frey, although she lived across the street from his office. Mrs. Frey knew nothing of the transaction at all; knew nothing of her son's being in debt to the company, and never saw the note or heard of it. When the suit was filed upon the note, according to her testimony, a man that she did not know, and who said nothing about being an officer, came to the house and asked if Emma Frey and Chester Frey were there. She and Chester were sitting in the room. The man had some papers in his hands. Chester got up and went to him and the man gave the papers to Chester, who put them in his pocket. The man left without saying anything to her. She asked Chester what it meant, and Chester told her that it was some business of his and not to think anything about it. She did not know that a suit had been brought against her or that any judgment had been taken. The first information she had was when a man came down to the house and looked at it to appraise it. She at once employed her lawyers, who examined the record and told her what had been done, and this was the first that she knew of it. They thereupon filed the pleading to set aside the judgment. Chester Frey's evidence is practically the same as his mother's as to what occurred when the officer came, with the difference that he knew the man to be a deputy sheriff and also knew that the suit had been filed against him; but he did not tell his mother anything about this.

On the other hand, the deputy sheriff testified that he gave the papers to Chester Frey, and that Chester

then handed one of them to his mother (as he believes). He returned the process executed on both of them. Two questions are presented:

1. Did the circuit court err in granting Mrs. Frey a new trial on the above proof?

2. Was the verdict of the jury in her favor warranted by the evidence, showing that she did not execute the note?

■ The evidence in the case showed that there had been no service of the summons on Mrs. Frey, and this being true, she was not before the court, and the decision of the court setting aside the judgment as to her cannot be disturbed. Gardner v. Lincoln Bank & Trust Co., 251 Ky. 109, 64 S. W. (2d) 497.

It was alleged and shown that the return of the officer on the summons was by mistake on his part. The judgment against her was void, and the court had power to set it aside on motion. Civil Code of Practice sec. 763. A petition to set aside judgment under section 518 (4-8) of the Code may be treated as a motion to set the judgment aside under this section. First State Bank v. Thacker's Adm'x, 215 Ky. 186, 284 S. W. 1020. The fact that the court based his ruling on a different ground is immaterial. The result he reached was right.

The witnesses were personally before the court. The court not only heard the evidence, but saw the witnesses. He knew local conditions and was better qualified to judge of the credibility of the witnesses than this court from a mere transcript of the evidence. Under the proof this court cannot hold that the circuit court abused a sound discretion. Deweese v. Maxwell (Ky.) 125 S. W. 145; Singleton v. Bond Lumber Co., 211 Ky. 729, 277 S. W. 1018.

■ It is the well-settled rule of this court that the verdict of a properly instructed jury will not be disturbed here, unless palpably against the evidence. There was proof by two experts before the jury that the signature of Mrs. Frey to the note was not in her handwriting, and while the appellants proved by another expert facts tending to show that Chester's statement as to how he signed his mother's name to the note was not true, this testimony as a whole is not very satisfying, and the statement of Chester as to the matter is substantiated to some extent by the appearance of the

paper and the other facts shown in the evidence. The truth as a whole shows very clearly that Mrs. Frey knew nothing about the note or the action until a man came to appraise the property, and she then took prompt action to set aside the judgment. The verdict of the jury is clearly not against the evidence.

Judgment affirmed.