## Miller et al. v. National Bank of London, Ky., et al.

(Decided April 22, 1938.)

244

GRAY & FEATHER and H. H. OWENS for appellants.

J. K. LEWIS and H. C. CLAY & SONS for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

By a prior action in the Laurel circuit court, appellees sought judgment against appellants, Effie and Henry Miler, Martha and David Elam, and Nay Chestnut on a promissory note for $5,200, executed by the first four above named. Chestnut had signed as surety. It was sought also to subject to sale certain described lands, which had been mortgaged by the Millers and Elams to secure the payment of the note. A default judgment and order of sale was entered in that action on October 22, 1936, and the land was sold by the commissioner. His report of sale was confirmed and deed made to the purchaser, B. L. Little.

In a petition filed on April 1, 1937, by the appellants, and a later intervening petition by Chestnut, it was sought to set aside the default judgment on the ground that no one of the defendants had been summoned. The Millers and Elams, at the time of the institution of the original suit, lived in Covington; Chestnut lived in London, Ky. Since the court below held that Chestnut was not summoned properly, and there is no cross-appeal, he passes from the picture.

They plead specifically that the return on the summons showing service, signed by Lewis Vogt, sheriff of Kenton county, and Al Beyhmer, deputy, was never served or delivered to any one of the four by either the sheriff or the deputy, or any other deputy sheriff, but "in truth and in fact the said summons, or copy was delivered to some person other than either of these plaintiffs, and at the time Beyhmer probably thought he was delivering the summons to the right parties." Upon these allegations appellants asserted that "the entering of the judgment was fraudulent in so far as they are concerned, and that the sale was a mistake and fraud against these plaintiffs; * * * was illegal, improper and unauthorized, and should be set aside and held for naught." Little, the purchaser at the decretal sale, was made party defendant in the suit now under discussion.

By joint answer of appellees all allegations of the pleading were denied, except as to the intervening petition of Chestnut. During the proceedings David Elam died, and the further prosecution of the suit, by appropriate order, was carried forward in the name of his personal representative.

Much proof was taken, which took quite a wide range, and upon submission to the court on pleadings, exhibits, and proof, the court denied relief, dismissed the petition, and granted appeal.

The summons to Kenton county, where the Millers and Elams lived, showed the following return:

"Executed the within summons July 31, 1936, on Effie Miller, Henry Miller, Mattie Elam, and David Elam by delivering a true copy hereof to each of them. Louis Vogt, S. K. C. Al. Beyhmer, D. S."

Later, by leave of court, and in so far as the record discloses without objection, the return was amended as follows:

"Executed the within summons on the within named defendants, Effie Miller and Harry Miller, by delivering to each of them a true copy of the within summons on July —, 1936. This May 7, 1937. Lewis Vogt, Sheriff Kenton County, Kentucky. By Al Landrum, D. S."

It will be noted that the above shows service on the Millers and not on the Elams, and was signed by

Landrum instead of Beyhmer, as was the original. There was further correction also by leave and without objection, made by Beyhmer as follows:

"Executed the within summons on the defendants, Mattie Elam and David Elam, by delivering to each of them a true copy thereof on the ——day of July, 1936, which summons was then delivered to Al Landrum, a deputy sheriff of Kenton County for the purpose of being executed on the defendants Effie A. Miller and Harry Miller; that the return made by him showing service on Effie A. Miller and Harry Miller was a mistake on his part; that he did not execute the summons on either said Effie A. Miller or Harry Miller. This May 7, 1937. Louis Vogt, Sheriff of Kenton County, Ky. By Alfred Beyhmer, D. E."

Mrs. Miller testified that at no time was a summons in the pending suit served upon her; that Beyhmer never at any time delivered her a copy. She knew nothing of the suit, as she says, until after the sale of the land. She did not know Landrum. She was served with process in 1936 in a suit "concerning Mr. Bradley," but could not recall who served it. Mr. Miller testified that he knew nothing of the court action until after the sale, when Mr. Elam told him about it. Asked if Beyhmer, or any other officer, served him with the process, he said: "Not that I know of." He did have process served on him in another suit in which Colyer, Bradley, and the Louisville & Nashville Railroad were interested. He said he had talked with Beyhmer since the land was sold, and he had told him he had not served him. He said he thought Landrum was the officer who had served him in the Colyer case, but not in any other case.

Mrs. Elam testified that she was not at home on July 31, 1936. She said that her niece Melba McKeehan was there on that day, and that she knew nothing of the suit until she heard Miller and Elam talking about what had happened. She also stated that she had never been served with process in the bank suit, by Beyhmer or any other officer. She did not know Beyhmer, but admits that he had executed papers on her some time in September of the same year. She also says she was served with some sort of process in the Bradley case. Melba McKeehan, Mrs. Elam's niece, sometimes living in her home, says that she went to

her aunt's home to get some of her clothing; that while there Beyhmer gave her two papers, which she never gave to either Mr. or Mrs. Elam, but which she thinks she laid on the library table. Mr. Beyhmer had told her they were summonses. She also said that after the sale of the land Beyhmer had signed a statement written by her to the effect that he did not serve summons on either of the Elams, but she had misplaced the paper.

Four deputy sheriffs were introduced on behalf of the appellees. Wessman, who was the office clerk in charge of process, testified that the city was divided for the purpose of serving process, each deputy "handling papers in his own district"; that his records showed many papers received for service on Mr. and Mrs. Elam. This officer hands out to the deputies all process. When they come back to his desk he writes the return, and the serving officers sign. Beyhmer and Landrum served in different, but contiguous districts.

Landrum testified that he was well acquainted with Harry Miller; had known him since 1906. He says that he served the process on Mr. and Mrs. Miller; that he went to the residence and found Mrs. Miller at home. He talked to her for some time, and delivered the copy of summons to her, and discussed the nature of the suit. Landrum said:

"It looks as if it was a note, and Mrs. Miller said, 'no, it is on some real estate down in Laurel County.'"

He asked for Mr. Miller, and was told that he was in Bellevue and would not be home until 5:15 p. m. The deputy then went to the garage and served the process on Miller, who said:

"This don't amount to much, does it, and I said 'Dave Elam and you and your wife are getting sued.' He said, 'I know what it is. It's some real estate that we got down in Laurel County.'"

Landrum says he made the return by delivering it to the writ clerk and telling him what he had done. He did not then sign the return, as he had broken his arm, and was carrying it in a sling.

Beyhmer said that he served the Elams in July, 1936. He went to the Elam home and inquired for Mr. Elam. A woman came to the door, and:

"I said, 'I got a summons for Mr. and Mrs. Elam'; she said, 'he is up at 38th Street at his brother's.' I handed her the summons and went up there."

When he got to the brother's home he met Elam coming out and delivered him the summons. He also says that he did not leave two copies of the process in this case at the Elam home. He had seen Mr. Elam four or five times prior to that day and had formerly served him with process. He says that after that time Elam got him to go to an attorney's office, and the attorney prepared an affidavit stating that he was mistaken about serving process on Mrs. Elam, but had served it on a young lady who resembled her somewhat. Beyhmer says he was mistaken in the facts set out in the affidavit, but was overpersuaded by Elam and his attorney to make same, without investigation. Later he went back to the Elam home and saw Mrs. Elam and was sure she was the person to whom he had delivered the summons. He again saw her in the attorney's office when she was deposing and recognized her as being the one to whom he had delivered process. He recalled that on one occasion he did deliver some other process, a subpœna, to Miss McKeehan. He was sure he delivered this particular summons to Mrs. Elam, because he had served the process on her in the Colyer case. He said that there was no resemblance of the niece to the aunt. He did make a written statement to Miss McKeehan, but it was to the effect that he had not personally served the Millers, a fact which is borne out by the amended return.

Another deputy testified that he knew Harry Miller, and had talked to him about the service of summons by Landrum, and that Miller said:

"If Al Landrum says he served the papers, he guessed he did. He had been served with so many papers recently he couldn't remember."

Little, the purchaser of the land under decretal sale, said that after his purchase Elam came to see him three or four times, each time trying to redeem the Laurel county property. They once agreed, but Elam failed to comply with the terms. He brought another proposed purchaser, and the deal was closed, but failed because of a defect in a check. Elam was present at the time. He states that at no time did Elam mention the fact that he had not been served with summons.

Bender and Acton, who were working on the property for Little, said that Elam came to them proposing a working contract in case he repurchased the property. A bank officer said that he had written Miller about the debt, and told him he was "going to get action in the first court." Elam came to the bank after the sale and discussed redemption, but not failure of service of summons.

The original suit in which judgment was rendered was by order directed to be filed as a part of the record in the instant suit. Later that order was set aside, and that record is not before us. However, we see that judgment was rendered July 26, 1936. The instant suit was filed April 5, 1937. The correction of return on the summons was made May 7, 1937. The judgment in the instant case was rendered June 23, 1937. The depositions of the Millers, Elams, and Miss McKeehan were taken on April 12, 1937. Depositions of officers of the bank, and others, were taken on May 4, 1937. The depositions of the deputy sheriffs were taken on May 7, 1936, and filed on May 18. At this taking Mr. Elam was present, and all defendants were represented by counsel. We note that although the return was corrected on May 7, there was no proof by any of the appellants in regard to same, nor any rebuttal proof controverting the testimony of the deputy sheriffs', who testified in regard to service, as shown by corrected return.

Since it is alleged that parties complaining knew nothing of the suit until after sale, and fraud was alleged, the suit was properly brought, under section 518 et seq. of the Civil Code of Practice. Klarer Provision Co. v. Frey, 252 Ky. 206, 66 S. W. (2d) 63; First State Bank v. Thacker's Adm'x, 215 Ky. 186, 284 S. W. 1020. That the officers had authority to make a correction of the return of summons—which was done here by leave of court, and without objection—is well settled. See section 49 of the Civil Code of Practice. A return may be corrected or "amended according to the truth," even after the term of office of the sheriff expires. Newton v. Prather, 1 Duv. 100; Louisville, H. & St. L. R. R. Co. v. Com., 104 Ky. 35, 46 S. W. 207, 20 Ky. Law Rep. 371. Such amendment may be made after judgment. Thompson v. Moore, 91 Ky. 80, 15 S. W. 6, 12 Ky. Law Rep. 664; Ramey v. Francis, Day & Co., 169 Ky. 469, 184 S. W. 380.

The sole question determined by the court below, and to be determined here, is whether or not by clear and convincing evidence fraud or mistake was shown. When such a case is presented to the court its solution depends altogether on the facts. That no two cases present exactly similar facts may be gathered from reading a number of cases coming to this court where attack was made on process because of imperfection, mistake, or fraud. We may, at once, dismiss the charge of fraud, since there is not sufficient proof which would lead to a belief that there existed or was attempted fraud, collusion, or conspiracy as between the bank and the officers of Kenton county, whereby judgment might be or was rendered against appellants by default.

The question then resolves itself into one where consideration of mistake arises. That there was a mistake in the return of the original summons there was no doubt. It, however, consisted of the endorsement of one deputy who had not served the Millers. The original return shows service by the sheriff, by deputy. This mistake was cured by the correction made under leave of court, without objection, and there is a lack of sufficient proof to show that the amended return did not show facts. There can be but little doubt, if any at all, but that the process was actually served on the Kenton county parties defendant.

In order to overcome an officer's return of process, where the attack is based on fraud or mistake, the evidence necessary to sustain the attack must be clear and convincing. Muscovalley v. Horn, 246 Ky. 778, 56 S. W. (2d) 354; Halcomb v. Creech, 255 Ky. 262, 73 S. W. (2d) 21. Reiterating the above rule, and in a case where the facts are similar in some respects to those in the case at bar, reference may be had to Billingsly v. Pearcy, 251 Ky. 546, 65 S. W. (2d) 699. Counsel for appellant relies upon Halcomb v. Creech, supra; Gardner v. Lincoln Bank, 251 Ky. 109, 64 S. W. (2d) 497; Klarer Provision Co. v. Frey, supra. In each of these cases we followed the rule that the verdict of a properly instructed jury will not be disturbed unless palpably against the evidence.

In the Halcomb Case, supra, which went out below on demurrer, we reversed the court, since we found the petition to have stated a good cause. The Gardner

Case turned on facts, but we reversed because there was convincing evidence of improper, or failure of, service. That the evidence in the instant case was sharply conflicting there can be no dispute. The court had the right to determine from all the proof that the evidence of appellant was not sufficiently clear or convincing to authorize the court to hold that the parties were not properly served with process. We have considered all the evidence and have determined that the conclusion reached by the court below was correct.

Judgment affirmed.