## F. W. Newsome et al. v. Hall (two cases).

March 13, 1942.

Joe Hobson for appellants.

Edward L. Allen for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

The two cases captioned above were heard together by the trial court and have been consolidated and ordered heard together in this court. The actions originated in the following manner.

Mary Hall, the mother of appellees, W. J. Hall and Emmitt Hall, Jr., on the 26th day of September, 1912 (her husband joining in the deed), conveyed to appellee, Emmitt Hall, a tract of land which is the subject of controversy in both actions. By this deed Mary Hall and her husband reserved a life estate in the land and also reserved the right to sell and convey the mineral and timber but the purchase price of the mineral and timber was to be the property of the second party, Emmitt Hall.

On August 10, 1931, appellant, F. W. Newsome, filed a petition in the Floyd Circuit Court against Emmitt Hall seeking to recover approximately $663, with interest. Summons was issued on this petition and placed in

the hands of the sheriff, B. L. Sturgill. The sheriff mailed this summons to his brother, Mel Sturgill, who made this indorsement on it, "Ex Aug 14, Mel Sturgill." The summons was mailed back to the sheriff who placed thereon the following return, "Executed the within summons on Emmitt Hall, Jr. by delivering to him a true copy hereof. Aug. 14, 1931. B. L. Sturgill, S. F. C. by Mel Sturgill, D. S." The sheriff had no other information on which to base this return than the memorandum made by his deputy. Default judgment was rendered against Emmitt Hall in September, 1931.

Execution was issued on the default judgment and levied by the sheriff on the tract of land conveyed to Emmitt Hall by his mother. The sheriff's return on the execution, however, after describing the tract of land, excepted oil and gas. Pursuant to the levy the sheriff advertised the tract of land for sale, the advertisement providing "Oil and gas excepted." The land was sold at execution sale and was purchased by appellant, F. W. Newsome, for the amount of his debt, interest and costs. Before the sale the land was appraised at $1,500, although the evidence indicates that it was then worth $3,000, or more. Following the execution sale, deed was executed by the sheriff to Newsome but the deed failed to recite that oil and gas was excepted. It seems that the sheriff excepted oil and gas from the levy of the execution pursuant to information imparted to him that Emmitt Hall was not the owner of the oil and gas by reason of the provision above referred to in the deed from Mary Hall to him. On January 12, 1935, Mary Hall and her son, Emmitt Hall (John Hall, husband of Mary Hall, having died), conveyed to appellee, W. J. Hall, the mineral rights in the land.

Appellee, W. J. Hall, filed an action against appellants, F. W. Newsome and his wife, alleging that he was the owner and in possession of the oil and gas in and under the land, described in the petition, and that Newsome and his wife were claiming to be the owners of the oil and gas, thereby casting a cloud upon his title. He sought to have his title to the oil and gas quieted.

Shortly after this action was filed, the appellee, Emmitt Hall, filed action against Newsome and wife seeking to set aside the default judgment obtained by Newsome against him as well as the execution sale and deed made pursuant thereto, alleging that he was the owner of the

land in controversy. In this action he attacked the sheriff's return on the summons, setting out the manner in which the return was made, alleging that through fraud and mistake the sheriff's return falsely certified that a copy of the summons had been delivered to him, whereas in fact the summons was never served on him.

On the issue as to service of summons the evidence was in substance as follows. Emmitt Hall testified that he was not in Floyd County in August and September, 1931, and that no copy of the summons was ever delivered to him and he knew nothing about the pendency of the action. Joe Sturgill, a brother of B. L. Sturgill, the sheriff, and of Mel Sturgill, the deputy sheriff, testified that he was with Mel Sturgill when the summons was executed and that it was executed by delivering a copy to Emmitt Hall's wife. According to Joe Sturgill, Emmitt Hall was not at home when the service of summons was made in this manner. Mel Sturgill was dead at the time of the trial.

Judgment was rendered in the first action quieting W. J. Hall's title to the oil and gas rights. This judgment did not purport to set aside, or have any effect on, the default judgment obtained by Newsome against Emmitt Hall. In the action of Emmitt Hall against Newsome it was adjudged that the default judgment obtained by Newsome against Emmitt Hall be vacated and held for naught and further adjudged that the execution deed, executed by the sheriff to Newsome, be cancelled and that Emmitt Hall was entitled to possession of the land. From each of these judgments Newsome and wife appeal.

The main ground relied on for reversal of each of the judgments is that the actions in which the judgments were rendered were collateral attacks on the default judgment obtained by Newsome against Emmitt Hall and that the pleadings were not sufficient to entitle appellees to relief. The argument is that, since these actions were collateral attacks on the default judgment, it was incumbent on appellees to allege that the record in the default judgment suit affirmatively showed the invalidity of the judgment, which they did not do.

If these actions had been collateral attacks on the default judgment, the appellants' position would be correct since it is our rule that a judgment rendered in a court of general jurisdiction cannot be collaterally at-

tacked unless the want of jurisdiction appears on the record. Crider v. Sutherland et al., 186 Ky. 7, 216 S. W. 57. However, we think appellants' position that the two actions constituted collateral attacks on the judgment is wholly untenable. In the first action, filed by W. J. Hall against appellants, no attack was made on the default judgment and the judgment rendered in behalf of W. J. Hall against appellants did not purport to hold the default judgment void. In that action W. J. Hall merely attacked proceedings subsequent to the default judgment, that is, he alleged that the sheriff did not levy the execution issued on the judgment on the oil and gas rights and consequently could not sell the oil and gas rights and that his deed purporting to convey such rights was void. This, of course, necessarily followed from the sheriff's failure to levy on the oil and gas or, rather, from the fact that his levy excluded the oil and gas. We think it clear that this action was in no sense a collateral attack on the judgment—it was neither a collateral nor a direct attack. The action merely attacked proceedings subsequent to the judgment.

Nor was the action of Emmitt Hall against appellants a collateral attack on the default judgment. It was a direct action filed against the holder of that judgment in which it was alleged that the judgment was void by reason of fraud or mistake of the sheriff in certifying that he had delivered a copy of the summons to Emmitt Hall when in fact he had not done so. It is true that in addition to praying that the judgment be declared void and set aside Emmitt Hall also sought additional relief— he sought to set aside the execution sale made under the judgment and the deed executed pursuant to the execution sale. Before being entitled to this additional relief it was necessary, of course, that he be successful in his action to set aside the judgment. The primary purpose of his action and the main relief sought by it was the setting aside of the judgment and his action was a direct attack on the judgment for this purpose against the person in whose favor the judgment was rendered. As a matter of fact, when this judgment was set aside and declared void, the additional relief sought followed as a matter of course since, if the judgment was void all proceedings thereunder were also void.

In support of the argument that the attack on this judgment was a collateral and not a direct attack appel-

lants cite the cases of Wayne v. Brumley et al., 190 Ky. 488, 227 S. W. 996; City of Paducah v. Paducah Traction Co., 168 Ky. 198, 181 S. W. 1093, 1094, and other similar cases, especially the following language in the Paducah case: "A collateral attack is any proceeding which has an independent purpose and contemplates some relief or result other than the overthrowing of the judgment, even though the overthrowing of the judgment may be necessary to accomplish this purpose." We think it clear that the action of Emmitt Hall against appellants was not a collateral attack on the judgment within the meaning of that language. In that case, and in the others cited by appellants, the actions were not filed against holders of the judgments but against other parties who had acquired rights pursuant to the judgments and the relief sought was not the setting aside of the judgments but other relief dependent on setting aside the judgments. In the present case the relief sought was the overthrowing of the judgment and additional relief which necessarily followed as a consequence of overthrowing the judgment. The action was a direct attack on the judgment.

We stated above that the sheriff's levy of the execution excepted oil and gas from the levy and that the sheriff's deed, in so far as it attempted to convey oil and gas, was for this reason void. Appellants take the position that no competent proof was introduced showing the sheriff's levy and that since his deed purported to convey oil and gas it will be presumed that he performed his duty and conveyed only the property actually levied on. This presumption would prevail, of course, if it was not properly proven that the oil and gas was not levied on. This position is based on the following factual situation. The circuit clerk was called as a witness and introduced in evidence what he took to be the original execution and the sheriff's return thereon. The execution purported to have been issued by his predecessor in office. On cross-examination he testified that he did not find the execution in his office but that it was handed to him by the attorney for appellees. He stated that he could not say whether it was actually the original execution. However, he filed with his testimony a copy of the execution and sheriff's return thereon which he certified to be a true and correct copy. In these circumstances it appears to us that if the appellants in good faith disputed the fact that the paper purporting to be the original exe-

cution was genuine, the burden shifted to them to introduce evidence showing that the purported execution and sheriff's return thereon were not authentic. They made no attempt to do this. The clerk having certified over his signature that the copy filed was a true and correct copy of the execution, the burden was on appellants to establish that this certification was false.

The only question giving us any real concern is that of the sufficiency of the evidence to establish that the summons in the action in which Newsome obtained the default judgment against Emmitt Hall was not executed by delivering a copy to Emmitt Hall. If the deputy sheriff who executed the summons had certified in his return that it was executed by delivering a copy to Emmitt Hall, it is probable that we would regard the evidence as insufficient to overcome this certification since it is our rule that an officer's return on process can only be impeached by clear, strong and convincing evidence. Miller v. National Bank of London, Ky., et al., 273 Ky. 243, 116 S. W. (2d) 320; Billingsly v. Pearcy, 251 Ky. 546, 62 S. W. (2d) 699; McGuire v. Cope et al., 225 Ky. 521, 9 S. W. (2d) 528, and cases therein cited. An examination of the cited cases reveals that the evidence referred to above would hardly be sufficient to overcome a positive certification of delivery to Emmitt Hall by the officer. However, we have no positive certification to that effect since the officer who executed the summons merely made thereon the memorandum "Ex Aug 14" and the sheriff who made out the completed return had nothing before him except this memorandum on which to base the return. We are thus relegated to considering the deputy's indorsement alone. It is true that from this indorsement of execution of the summons the presumption would be that the execution was done according to law, that is, by delivering a copy to Emmitt Hall. Case v. Colston, 1 Metc. 145. We thus have a mere presumption that a copy of the summons was delivered to Emmitt Hall and not a positive certification of the officer to that effect. This being true, it appears to us that the evidence was sufficient to overcome this mere presumption—clear, strong and convincing proof is required only when it is sought to overthrow a positive certification by the officer. While we would give but little weight to the testimony of Emmitt Hall that the summons was not served on him, nevertheless considerable weight must be attached to the testimony of Joe Sturgill, the deputy sheriff, who testi-

fied that the summons was executed by his brother by delivering the copy to Emmitt Hall's wife. Such service was, of course, insufficient since a summons must be served by delivering a copy of it to the person to be summoned. Civil Code of Practice, Section 48.

The judgments are affirmed in both cases.